## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HUGH GILBERT MARTIN,

      Petitioner,

v.                            Case No. 8:05-cv-00747-T-17MSS

JAMES R. MCDONOUGH[1],

      Respondent.

_____/

### ORDER

    This cause is before the court upon Petitioner Hugh Gilbert Martin's ("Martin")

Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.[2]  (Dkt. 6).

Martin challenges his 2002 convictions entered by the Sixth Judicial Circuit Court, Pinellas

County, Florida.  Respondent has filed a response to the petition (Dkt. 14), and Martin has

filed a reply thereto (Dkt. 23).

### Background

    Martin was charged by Amended Information with attempted sexual battery (Count

1), false imprisonment (Count 2) and tampering with a witness (Count 3).  (Dkt. 12, Ex. 1,

---

[1] In his petition, Martin names James V. Crosby, Jr., former Secretary of the Department of Corrections, as the party respondent in this case.  As of the date of this order, James R. McDonough is the Secretary of the Department of Corrections.  Accordingly, pursuant to Rule 25 of the Federal Rules of Civil Procedure and Rule 2 of the Rules Governing Section 2254 Cases, the Court will substitute McDonough as Respondent.  See Fed. R. Civ. P. 25(d); Rule 2(a), Rules Governing Section 2254 Cases (2006).

[2] Martin signed his original § 2254 petition on April 14, 2005. (Dkt. 1).  By order entered on April 22, 2005, the Court dismissed the petition without prejudice and directed Martin to file an amended petition that complied with the instructions on the § 2254 form and contained a brief statement of facts supporting his claims.  (Dkt. 4).  Martin signed his amended § 2254 petition on May 27, 2005, and it was received by the Court on June 1, 2005.  (Dkt. 8).

Vol. 3, pp. 475-76 ).[3]  Martin, *pro se*, proceeded to jury trial on April 18-19, 2002, and was found guilty on all charges.  (Id. at pp. 552-55).  On February 11, 2003, the state trial court sentenced him as a prison releasee offender to a term of five years imprisonment on each count to run concurrently.  (Dkt. 12, Ex. 1, Vol. 5, pp. 843-46).  Martin, *pro se*, pursued a direct appeal.  (Id. at pp. 873-75; Ex. 2).  The state district court of appeal per curiam affirmed Martin's convictions on November 17, 2004, in Case No. 2D02-5687.  (Dkt. 12, Ex. 4).  *See Martin v. State*, 895 So.2d 1076 (Fla. 2d DCA 2004) [Table].  Martin filed a motion for rehearing and a motion for rehearing en banc, both of which were denied by the state district court of appeal on January 25, 2005.[4]  The mandate issued on February 17, 2005.  Martin did not file a petition for writ of certiorari in the United States Supreme Court.

The instant amended *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was signed on May 27, 2005, and received by the Court on June 1, 2005. (Dkt. 8).  *See supra*, ftnt. 2.  The petition is timely.  Upon review of the record, Martin's petition must be DENIED.

### Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

---

[3] The page numbers cited are those found at the bottom center on the pages compiled in Exhibit 1.

[4] Copies of these motions were not filed as exhibits in this case.  The dates of filing of these motions and the mandate are taken from the online docket of the Florida Second District Court of Appeal at: http://199.242.69.70/pls/ds/ds_docket?p_caseyear=2002&p_casenumber=5687&psCourt=2&psSearchType=.

§ 2254(a).  Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell,* 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *Price v. Vincent,* 538 U.S. 634, 638-39 (2003); *Clark v. Crosby,* 335 F.3d 1303, 1308 (11th Cir. 2003).  "The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions."  *Putnam v. Head,* 268 F.3d 1223, 1241 (11th Cir. 2001) (citing *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000)).  A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. *See Jones v. McDonough,* 2007 WL 174442 at *1 (11th Cir., Jan. 24, 2007); *Putnam,* 268 F.3d at 1241.  A state court makes an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of a petitioner's case, or unreasonably extends or unreasonably declines to extend,

a legal principle from Supreme Court case law to a new context. *See id.* "[A] federal habeas court may not issue the writ under the reasonable application clause simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. An "unreasonable application" is an "objectively unreasonable" application." *Putnam*, 268 F.3d at 1241.

State courts need not explain their merits rulings to qualify for deference under the AEDPA. *Jones*, 2007 WL 174442 at *2. Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec.'y for the Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002). "All that is required under § 2254(d)(1) is an adjudication on the merits, not a full state court opinion." *Parker v. Secy for the Dep't of Corr.*, 331 F.3d 764, 776 (11th Cir. 2003). "Even a summary, unexplicated rejection of a federal claim qualifies as an adjudication entitled to deference under § 2254(d)(1)." *Herring v. Sec'y for the Dep't of Corr.*, 397 F.3d 1338, 1347 (11th Cir. 2005). Finally, a state court's factual findings are presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

Since Martin's conviction was entered after the AEDPA was enacted, his petition is subject to the provisions thereof. Because a state court initially considered the issues raised in the petition, § 2254(d) governs the review of Martin's claims. *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

4

### Exhaustion and Procedural Default

Before this Court may grant habeas relief to a state prisoner under 28 U.S.C. § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)(1)(A), (c); *Keinz v. Crosby*, 2006 WL 408686 (11th Cir. 2006); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan,* 526 U.S. at 842; *see also Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot present a federal constitutional claim in federal court unless he first properly presented the claim to the state *courts*) (citations omitted)). A § 2254 petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003) (citing 28 U.S.C. § 2254(c)). In so doing, a state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt*, 348 F.3d at 1358-59 (citing O'Sullivan, 526 U.S. at 845).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Pursuant to this doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception

is applicable." *Id.* (citing O'Sullivan, 526 U.S. at 845-6).   Under the first exception, to establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478 (1986).   To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *See United States v. Frady*, 456 U.S. 152 (1982).   In other words, he must show that there is at least a reasonable probability that the outcome of the proceeding would have been different. *See Henderson*, 353 F.3d at 892 (citing *Wright*, 169 F.3d at 703; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002)).

Under the second exception, a federal court may review a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice. *See Henderson*, 353 F.3d at 892 (citing *Murray*, 477 U.S. at 495-96).   "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.* This exception relates to a petitioner's "actual" rather than "legal" innocence. *See Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Murray*, 477 U.S. at 495-96)).   "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Panarites v. Crosby*, 2006 WL 196939 at *5 (M.D. Fla., Jan. 24, 2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).   Moreover, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Johnson*, 256 F.3d

6

at 1171 (citing *Calderon*, 523 U.S. at 559 (internal quotation omitted)).

## Discussion

**Grounds One, Two, Three, Four, Five, Eight, Eleven and Twelve**

In Ground One of the instant § 2254 petition, Martin contends that the state trial court abused its discretion when it failed to apply the correct legal standard in its denial of his motion for new trial, and that the state trial court erred when it failed to hold a hearing on his motions for new trial and arrest of judgment. In Ground Two, he asserts that the state trial court's order denying his motions for new trial and arrest of judgment violated the doctrine of separation of powers. In Ground Three, Martin alleges that his convictions were obtained by a defective Information. In Ground Four, he contends that the Information was invalid because the State failed to obtain the requisite sworn statement or affidavit attesting to the facts of the alleged crimes. In Ground Five, Martin contends that his conviction was obtained by contradictory and inconsistent perjured testimony. In Ground Eight, Martin alleges that the State's failure to designate witness Sylvia Franklin as an expert witness violated his substantive due process rights. In Ground Eleven, he asserts that his convictions were obtained through the use of inadmissible hearsay testimony that did not fall under the excited utterance exception to the hearsay rule. In Ground Twelve, Martin asserts that the State committed a discovery violation when it failed to disclose all oral statements made by him prior to trial despite his specific discovery request for such materials.

Each of the aforementioned claims was raised and rejected on direct appeal. After reviewing Martin's *pro se* appellate brief, the Court concludes that he has failed to properly

exhaust the federal dimension of each of these claims.[5]  While Martin presented these issues on direct appeal, he did not allege a violation of his federal constitutional rights. Rather, he presented his claims in state law terms only, with reference to state statutes, state court decisions and various provisions of the Florida Constitution.  Issues presented in a federal habeas corpus petition must have been fairly presented to the state courts and exhausted prior to presentation in a § 2254 petition.  *See* 28 U.S.C. § 2254(b)(1); *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005).  To exhaust a claim sufficiently, a petitioner must have presented the state court with the particular legal basis for relief in addition to the facts supporting it. *See Diaz*, 2006 WL 3469522 at *1 (citing *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317 (11th Cir. 2004) (internal citations omitted)).  A petitioner must present his claims to the state courts such that they have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *See Kelley*, 377 F.3d at 1344 (citing *Picard v. Connor*, 404 U.S. 270 (1971)).  Thus, the prohibition against raising non-exhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific factual contentions that might support relief.  *Id.*

In the instant case, Martin did not present the federal dimension of the claims presented in Grounds One, Two, Three, Four, Five, Eight, Eleven and Twelve to the state courts at trial or on direct appeal.  Thus, he deprived the state courts of a "full and fair

---

[5] In his response, Respondent asserts that "each ground now raised appears to have been previously raised on [Martin's] direct appeal.  Respondent does not assert the exhaustion doctrine." (Dkt. 14, p. 8). However, a review of Martin's appellate brief clearly shows that he premised the claims now presented as Grounds One, Two, Three, Four Five, Eight, Eleven and Twelve of the instant § 2254 petition on state law grounds only.  The exhaustion of the federal dimension of a habeas claim is a statutory requirement that cannot be waived by this Court. *See* 28 U.S.C. § 2254(b); *Crumbley v. Crosby*, 2007 WL 781768 at *8 (M.D. Fla., Mar. 13, 2007); *O'Sullivan*, 526 U.S. at 842.  Therefore, as a threshold matter, the Court will evaluate the exhaustion of each of these claims.

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *See Bucklon v. Crosby*, 2006 WL 2990449 at *3 (M.D. Fla., Oct. 19, 2006); *O'Sullivan*, 526 U.S. at 845. A § 2254 petition cannot be granted unless a petitioner has exhausted his available state court remedies. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"). Martin's state law arguments presented at trial and on direct appeal do not suffice to meet the exhaustion requirement. *See Bucklon*, 2006 WL 2990449 at *3 (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim on a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Thus, these claims are not exhausted for purposes of federal habeas review.

However, were Martin to now attempt to re-raise these claims in state court on federal grounds, the claims would be procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722 (1991). Portions of a petitioner's claims that are not exhausted but would clearly be barred if returned to state court must be dismissed. *See Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "An issue that was not properly presented to the state court which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review." *Cobbs v. McDonough*, 2006 WL 2092381

at *8 (M.D. Fla., July 26, 2006) (citing *O'Sullivan*, 526 U.S. at 839-40, 848). "Issues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack." *Harvey v. Dagger*, 656 So.2d 1253, 1256 (Fla. 1995). Because Martin could have raised and preserved a federal constitutional claim regarding each of the issues presented in Grounds One through Five, Eight, Eleven and Twelve on direct appeal, he was precluded from doing so collaterally in a Rule 3.850 motion for post-conviction relief. *See e.g., Childers v. State*, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ("The law is clear that where an issue could have been raised on direct appeal, it is not the proper subject for a Rule 3.850 motion.") (citations omitted). These issues are now procedurally barred from review in the state courts because the state procedural rules do not provide for a second direct appeal. *See Taylor v. McDonough*, 2007 WL 189389 at *13 (N.D. Fla., Jan. 23, 2007); Fla. R. Crim. P. 3.850(b), (g). Thus, this Court cannot consider Martin's claims unless he can make a showing that the cause and prejudice or the fundamental miscarriage of justice exception is applicable. *See Jones*, 256 F.3d at 1138; *O'Sullivan,* 526 U.S. at 845-6.

Martin does not present any argument to demonstrate cause or prejudice that would excuse his default. Moreover, he has neither alleged nor shown that the fundamental miscarriage of justice exception applies. Because Martin fails to proffer "specific facts which support a finding that one of the exceptions to the procedural default rule exists," it would be improper for this Court to discuss the merits of these claims. *See Crumbley*, 2007 WL 781768 at *9 (citing *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996)); *see also Surrency v. Hadi*, 2006 WL 3469534 at *6 (M.D. Fla., Nov. 30, 2006) (citing *Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir.1995)). Accordingly, Grounds One, Two, Three, Four, Five, Eight,

Eleven and Twelve of the instant petition are procedurally barred and relief will be denied.

See Amoroso v. McDonough, 2006 WL 2507618 at *3 (M.D. Fla., Aug. 29, 2006); Kelley, 377 F.3d at 1344.

**Ground Six**

Martin contends that "his rights to the Sixth Amendment's guarantee of confrontation of the State's key witness was violated when the trial court denied petitioner to [sic] question the witness on her probationary status at the time of testifying at trial." He alleges that "[a]ll efforts by petitioner to discredit the State's key witness by reference to her status of being on probation were rebuffed by objections of the prosecution which were sustained by the trial court." Martin asserts that such actions denied him his rights under the Sixth and Fourteenth Amendments.

Martin raised this claim on direct appeal. Specifically, he alleged, in relevant part, the following in his appellate brief:

> The court denied proper impeachment of the State's witness Cheryl Rucker on the issue of her probationary status when she testified at trial. [CE =Vol. 7, page 218].[6] The court intervened to state that she admitted to being on probation from the State's inquiry on direct. [DE= Vol. 6, page 131].
>
> Evidence of a witness [sic] probationary status has probative value to show that the witness may have bias, prejudice, interest or possible ulterior motive for testifying

---

[6] In his appellate brief, Martin used the following abbreviations in his citations to the state trial court record on appeal:

CE= cross examination
DE= direct examination

Reference to the record of appeal will be by the volume ("Vol.") and a number.

(Dkt. 12, Ex. 2).

to curry favor with the State through their testimony.  <u>Lusk v. State, 531 So.2d 1377 (Fla. App. 2 Dist. 1988) [sic]; Watts v. State, 450 So.2d 265 (Fla. App. 2 Dist. 1984) [sic]; Livingston v. State, 678 So.2d 895 (Fla. App. 4 Dist. 1996) [sic], 90.608(2) Fla. Stat.</u>

The Defendant was attempting to elicit testimony of any deals, promises or leniency on her probationary status for her testimony at trial. [CE=Vol. 7, page 219], <u>Fannin v. State, 581 So.2d 974 (Fla. App. 1 Dist. 1991) [sic], Powe v. State, 413 So.2d 1272 (Fla. App. 1 Dist. 1982) [sic].</u>

This action by the court further prevented the impeachment of the witness about the fact that when this alleged incident occurred on November 7, 2000 that she currently [sic] on probation for attempting to obtain a false Florida identification card. [Vol. 1, pages 98-99].  <u>Scott v. State, 730 So.2d 732 (Fla. App. 2 Dist. 1999) [sic], Thergood v. Tedford, 473 F.Supp. At 342 [sic] (1978), Davis v. Alaska, 94 S.Ct. 1105, 415 U.S. 308 (U.S. Alaska 1974) [sic], U.S.C.A. Const. Amend. 6.</u>

. . .

It was reversible error for the trial court to deny the Defendant the wide latitude to cross-examine the witness on her probationary status and a violation of the Defendant's constitutional Sixth Amendment rights, Article I, Section 16 of the Florida Constitution.  Accordingly, the district court [of appeal] must vacate the sentence and remand for a new trial.  <u>Sanders v. State, 707 So.2d 664, 667 (Fla. 1998)</u>.

(Dkt. 12, Ex. 2, pp. 22-23) (emphasis in original).[7]  The state district court of appeal rejected this claim and per curiam affirmed Martin's convictions without written opinion.  To the extent that Martin presented the federal dimension of this claim to the state courts by presenting it as a Sixth Amendment claim under the United States Constitution and by citing to federal case law addressing this issue on federal grounds, it is deemed exhausted and will be addressed on the merits.  *See Baldwin*, 541 U.S. at 32.

The Confrontation Clause of the Sixth Amendment guarantees that every criminal

---

[7]  The handwritten page numbers referenced in this exhibit are those affixed to the bottom center of the page by Martin.

defendant has the right to confront witnesses against him. *See Provenzano v. Singletary*, 3 F.Supp.2d 1353, 1368 (M.D. Fla., Mar. 3, 1997) (citing *Davis v. Alaska*, 415 U.S. 308, 315 (1974)).   Because the Confrontation Clause has been made applicable to the States through the Fourteenth Amendment, state courts must apply its dictates equally in state criminal proceedings. *See Sanders v. Moore,* 156 F.Supp.2d 1301, 1308 (M.D. Fla., Aug. 14, 2001); *Provenzano*, 3 F.Supp.2d at 1368; *Pointer v. State of Tex.*, 380 U.S. 400, 403 (1965).

The United States Supreme Court has observed "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Provenzano*, 3 F.Supp.2d at 1368-69 (citing *Delaware v. Fernsterer*, 474 U.S. 15, 20 (1985) (emphasis in original)).   Provided that an opportunity for cross-examination as required by the Sixth Amendment has been satisfied, the trial judge's discretionary authority comes into play. *See id.* (Internal citations omitted).   The Eleventh Circuit has stated that cross-examination may be limited, without violating the defendant's Sixth Amendment rights, under the following circumstances:

(1) the jury, through the cross-examination permitted, was exposed to facts sufficient for it to draw inferences relating to the reliability of the witness; and

(2) the cross-examination conducted by defense counsel enabled him to make a record from which he could argue why the witness might have been biased.

*See id.* (citing *United States v. Calle*, 822 F.2d 1016, 1020 (11th Cir. 1987)).

In the instant case, the trial record shows that the state trial court afforded Martin

ample opportunity to cross-examine Cheryl Rucker ("Rucker") and apprise the jury that she was on probation at the time of trial. On direct examination, Assistant State Attorney Nancy Slack ("Slack") elicited from Rucker that she was on probation for misdemeanor charges unrelated to the events giving rise to charges against Martin.[8] On cross-examination, Martin elicited the following information from Rucker:

| | |
|---|---|
| MR. MARTIN: | Back in [sic] December 13th, December 21st of 2001, you was [sic] arrested? |
| MS. SLACK: | Judge, I'm going to object. This is not proper. |
| THE COURT: | Okay. Are we referring to the one she's on probation for? |
| MR. MARTIN: | Yes. |
| THE COURT: | She has already admitted that. So let's move on. She has admitted she's on probation. Okay? |
| MR. MARTIN: | I was trying to ask, what is she on probation for? |

---

[8] At trial, the following exchange took place on direct examination of Rucker:

MS. SLACK:   Okay. Get this out of the way real quick. Are you currently on probation for some misdemeanor charges?

MS. RUCKER: Yes, I am.

MS. SLACK:   Those are not connected to Mr. Martin?

MS. RUCKER: No.

MS. SLACK:   They weren't in effect when this case happened?

MS. RUCKER: No, ma'am.

(Dkt. 12, Ex. 1. Vol. Six, p. 131).

14

THE COURT:        Ma'am, do you know what you're on probation for?

MS. RUCKER:       Simple battery.

THE COURT:        Okay.

MR. MARTIN:       Battery?

MS. RUCKER:       Domestic violence.

MR. MARTIN:       You wasn't [sic] given no kind of special deals or nothing by the State –

MS. RUCKER:       No, I wasn't.

MR. MARTIN:       – or consideration –

MS. RUCKER:       No.

MR. MARTIN:       – to testify to this as to any leniency or, just being charged with a simple domestic misdemeanor battery, and it should have probably been felony battery.

MS. SLACK:        Judge, I'm going to object.  He has no basis to ask that question.

THE COURT:        Unless, Mr. Martin, you have some proof that these charges were reduced.

MR. MARTIN:       Yes.

THE COURT:        Let me see.  You can show them to Ms. Slack, and then show them to the bailiffs, sir.

MS. SLACK:          Judge, I'm going to object to this question.  This is not the case.

THE COURT:          Mr. Martin, you're referring to that statute. The question you're asking; you're implying she had more serious charges, and they somehow were reduced.  Unless you have any evidence to show that, or any other documentation –

MR. MARTIN:         My evidence documents that you had obtained off the Web, and stated effective July 1st, 2001.

THE COURT:          Is that a Florida statute, sir?  Could you give it to the bailiff,, please?

MR. MARTIN:         I have that, and the statutes themselves.

THE COURT:          One second.  One second, Mr. Martin.

                              - - -

                    (Document handed to the court).

                              - - -

THE COURT:          No, sir. No, no, no, sir. Just simply, you have the statute as to what a battery is, and then you also pulled from the Internet an article regarding consequences and penalty in domestic battery. This is a generalized thing. No, no, sir. We're dealing with her.  Unless you have any specific proof, like any document that you could question her about, sir, I'm not going to allow you to do that. Okay? Then go ahead, Mr. Martin. Do you have any further questions of this witness, Mr. Martin?

MR. MARTIN:         I'm about closing down now, Your Honor.

MR. MARTIN:         So it is your contention you were not given any kind of deals [sic] or leniency on your probation.  Is that correct?

MS. SLACK:          That's asked and answered, Judge.

MS. RUCKER:         I just answered that question.

16

(Dkt. 12, Ex. 1, Vol. Seven, pp. 218-21).

Martin fails to demonstrate how his right to confront Rucker was impeded.  The record shows that the state trial court did not unreasonably limit or impede his opportunity to cross-examine Rucker.  Martin was not denied the chance to question Rucker about her probationary status altogether; rather, the state trial court limited his questioning to the parameters allowed under the applicable rules of evidence.  The jury was made aware of Rucker's probationary status and the underlying offense related thereto.  Moreover, Martin was also able to question Rucker as to inconsistent statements between her trial testimony and her deposition.  Thus, cross-examination was sufficient to expose the relevant facts from which the jury could draw inferences and evaluate Rucker's credibility.  *See Provenzano*, 3 F.Supp.2d at 1369.  Martin was able to create a record from which to argue that her testimony was unreliable.  *See id.* (citing *United States v. Brown*, 634 F.2d 819, 825 (5th Cir. 1981)[9] ("[w]hether the defendant's Sixth Amendment rights have been violated depends ... not only on the use to which the excluded testimony could have been put, but also on the alternative means open to the defendant to impeach the credibility of the witness.").

Based on the foregoing, the Court finds there was no Sixth Amendment violation.  *See United States v. Williams*, 837 F.2d 1009, 1015 (11th Cir. 1988) ("trial judges retain wide latitude to impose reasonable limits on cross-examination to prevent interrogation that is confusing, repetitive, or marginally relevant") (citation omitted).  Martin was given the

---

[9] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

opportunity through cross-examination to expose the fact of Rucker's probationary status and to expose any possible bias she may have had as a result thereof.   The Sixth Amendment Confrontation Clause "is satisfied where sufficient information is elicited from the witness from which the jury can adequately gauge the witnesses' [sic] credibility." *See United States v. Burke*, 738 F.2d 1225, 1227 (11th Cir. 1984) (citing *Davis*, 415 U.S. at 315-16). This Court finds that the state district court of appeal's decision that Martin was not entitled to relief on this claim is not contrary to, or an unreasonable application of, clearly established Federal law or was an unreasonable determination of the facts of his case. *See* 28 U.S.C. § 2254(d). Ground Six does not warrant federal habeas corpus relief.

**Ground Seven**

Martin alleges that his Sixth Amendment right to confrontation was violated because the "testimony of the State's expert witness was prejudicial to [him], by failure on the part of the State not to comply with the rules of discovery." Martin contends that, although he attempted to elicit statements made by witness Sylvia Franklin[10] ("Franklin") in connection with his case prior to trial, no such statements were disclosed to him. He alleges this failure to disclose amounted to a *Brady*[11] violation and violated his due process rights. Martin further alleges that when he attempted to question Franklin on her expected compensation for testifying in the case, the State objected and the state trial court instructed him to move on to the next question. Martin contends this action unlawfully limited his right of cross-

---

[10] Franklin testified that she worked for the Sexual Assault Victim Examination ("SAVE") program and performed "medical evidence-gathering examinations after alleged sexual battery." (Dkt. 12, Ex. I, Vol. Seven, pp. 223-24). Franklin performed a SAVE exam on Cheryl Rucker.

[11] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (failure of prosecutor to turn over evidence favorable to a defendant violates due process where the evidence is material to either guilt or punishment).

examination of this witness in violation of the Sixth Amendment.  To the extent that Martin cited some state law cases related to discovery violations that relied on federal constitutional law as support for this claim in his brief on appeal to the state court, and given that he cited and relied, in part, on Supreme Court precedent related to the issues presented in his claim, the Court will consider the federal dimension of this claim to have been presented to the state court and will address the merits.[12]

As to the first issue presented in this claim, Martin contends that the State failed to name Franklin as a witness and failed to turn over a copy of Franklin's SAVE report to him pursuant to his discovery request in violation of the requirements of *Brady*.  To establish a *Brady* violation, a defendant must prove: (1) that the government possessed evidence favorable to the defense; (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence; (3) that the prosecution suppressed the evidence; and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense.  *See United States v. Schier*, 438 F.3d 1104, 1106, n.1 (11th Cir. 2006) (citing *Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002)).  A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding.  *See Smith v. Crosby*, 2005 WL 3445528 at *5 (M.D. Fla., Dec. 14, 2005) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  "The question is not whether the defendant would more likely than not have received a different

---

[12] *See Hartge v. McDonough*, 2006 WL 3690728 (M.D. Fla., Dec. 14, 2006) (finding that petitioner had fairly presented federal dimension of his Sixth Amendment Confrontation Clause claim to the state trial court on direct appeal where petitioner cited a Supreme Court Confrontation Clause case which contained the relevant Confrontation Clause law, the Sixth Amendment, and a state case discussing reliability, the essence of petitioner's claim, under the Confrontation Clause).

verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).  To meet this standard, "the defendant does not need to demonstrate that, after discounting the inculpatory evidence in light of the evidence in question, there would not have been enough evidence to convict him." *Id.* (citing *Taylor v. Singletary*, 122 F.3d 1390, 1395 (11th Cir. 1997)).  Rather, the defendant must show that the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.*

In the instant case, it appears Martin is claiming he was denied due process of law based on *Brady* by the State's alleged failure to disclose Franklin's name and the contents of her SAVE report.  Martin's claim is refuted by the record.  Respondent has filed along with his response a copy of the record on direct appeal from the state district court of appeal.  Contained in that record is a copy of an Additional Witness List and Acknowledgment of Additional Tangible Evidence dated February 19, 2001.  (Dkt. 12, Ex. 1, Vol. One, pp. 182-83).  This document stated, in relevant part as follows:

> Pursuant to Rule 3.220, Florida Rules of Criminal Procedure, the following constitutes a list of additional tangible evidence and additional witnesses which may be relevant to the offense charged or to any defense of the person charged with respect thereto:
>
> EVIDENCE:
> Availability of 911 tape, availability of 2 controlled call tapes, photographs, Det. Babb's Report, Det. Burris' Report, Save Exam, letter from defendant to victim.
>
> WITNESSES:
> Sylvia Franklin, Pinellas County Health Dept., 12420 130th Ave. N., Largo, Florida 33774

(Id.).   This document, signed by Assistant State Attorney Slack, contains a certified statement that a copy of the document was furnished to Bob Dillinger of the Public Defender's Office who represented Martin at that time.[13]   Martin does not dispute this fact, nor does he allege in his § 2254 petition that neither he nor his attorney received this notice.   Pursuant to *Brady*, a defendant's right to due process is violated when the prosecution suppresses evidence favorable to the defendant where the evidence is material to either guilt or punishment.   *See Smith*, 2005 WL 3445528 at *6.   Here, Martin has not demonstrated that the evidence he sought was suppressed by the State.   Thus, this claim of his federal habeas petition fails.

As to Martin's claim that his confrontation rights under the Sixth Amendment were violated by the state trial court when it limited his questioning of Franklin on her expected compensation for testifying at trial, this claim likewise lacks merit.   The record reflects that Martin was given ample opportunity to cross-examine Franklin on this issue.   Specifically, the following exchange took place on cross-examination:

MR. MARTIN:        Do you ever receive any compensation to testify?

MS. FRANKLIN:     I get paid as part of my job for doing examinations and testifying.

MR. MARTIN:        You don't get no [sic] other compensation, like taking the witness stand and testifying, you know, coming out here, driving out here?

---

[13] Martin initially had counsel appointed to represent him by order entered by the state trial court on November 9, 2000. (Dkt. 12, Ex. 1, Vol. One, pp. 3-4). He signed his first Motion to Dismiss Counsel on December 17, 2000. (Id. at pp. 30-32). Martin signed his second Motion to Dismiss Counsel on January 1, 2001. (Id. at pp. 36-38). By order rendered June 25, 2001, the state trial court granted Martin's motion and request to proceed *pro se*. (Dkt.12, Ex. 1, Vol. Two, p. 256). Thus, at the time this list of additional evidence and witnesses was filed, Martin was still represented by counsel.

MS. FRANKLIN:     That's part of my job to respond for examinations, and to respond when I'm subpoenaed.

MR. MARTIN:       I mean, like is that like extra pay, or does it come in the form of a regular paycheck?

MS. FRANKLIN:     Well, I don't – I'm not on salary, I'm on call.

MR. MARTIN:       Uh-huh.

Ms. FRANKLIN:     And each time I show up and do what they want me to do, there's an accounting.

- - -

(Document shown to the State)

- - -

MS. SLACK:        Judge, I haven't seen this before today, and this is not related to this case; it's related to another case.

MR. MARTIN:       This is related to the case.  I'm trying to elicit testimony she's actually getting paid extra hours coming out here for court time, preparation time, knowledge outside of what she actually does as her regular job.

THE COURT:        May I see it, Mr. Bailiff?

THE BAILIFF:      Yes.

- - -

(Document handed to the Court by the bailiff.)

- - -

THE COURT:        If I may, Mr. Martin, I don't know where you got this. Apparently, it is a case that was back in 1997, where she billed that case.  Are you trying to tell her – in this billing showing time for deposition, for court time, her mileage, is that what you're trying to ask her?

MR. MARTIN:       Yes, I'm trying to elicit from this, her testimony, testifying here,

22

> compensation in any way more than what she actually makes on her regular salary, even though we know you do jobs of [sic] SAVE Examination. But we know you're getting compensated extra for this.

MS. FRANKLIN:  I don't get a regular salary if I'm on call, and I don't get a – I don't get any pay, not on call. I don't have net pay. If I get a subpoena and it's canceled, I don't get any pay. If I go trial, I bill for my time.

MR. MARTIN:  So it's kind of beneficial to you to show up and testify in court on these types of matters, right?

MS. FRANKLIN:  It doesn't benefit me.

MR. MARTIN:  If you don't testify, you can't get paid, you're not on salary?

MS. FRANKLIN:  The benefit to me is I get paid for my time.

MR. MARTIN:  Yes. As I said, it's beneficial for you to take the witness stand and testify?

MS. FRANKLIN:  It's beneficial for me to get paid for the work I do.

MR. MARTIN:  Thank you. No further questions.

(Dkt. 12, Ex. 1, Vol. Seven, pp. 258-60).

Martin fails to demonstrate how his right to confront Franklin was impeded. The record shows that the state trial court did not unreasonably limit or impede his opportunity to cross-examine Franklin about her compensation for testifying as a witness at trial. Thus, cross-examination was sufficient to expose the relevant facts from which the jury could draw inferences and evaluate Franklin's credibility. *See Provenzano*, 3 F.Supp.2d at 1369.

Martin was able to create a record from which to argue that her testimony was biased or prejudiced as Martin contends. *See id; Brown*, 634 F.2d at 825. Based on the foregoing, the Court finds there was no Sixth Amendment violation. *See Williams*, 837 F.2d at 1015; *Burke*, 738 F.2d at 1227. The Court finds that the state district court of appeal's decision that Martin was not entitled to relief on this claim is not contrary to, or an unreasonable application of, clearly established Federal law or was an unreasonable determination of the facts of his case. *See* 28 U.S.C. § 2254(d). Ground Seven does not warrant federal habeas corpus relief.

**Ground Nine**

In Ground Nine, Martin alleges that his right to a speedy trial was violated by the "arbitrary, vexatious and oppressive delays either instilled or instituted unduly [sic] by the Public Defender Office, the State Attorney and the trial court." He contends that "the interval between date of arrest and the day of trial had longed [sic] crossed the threshold dividing ordinary from presumptively prejudicial delay," thereby violating his Sixth and Fourteenth Amendment rights. This issue was presented and rejected by the state court on direct appeal. Respondent asserts in his reply, as he did in his brief on direct appeal, that under the dictates of *Barker v. Wingo*, 407 U.S. 514 (1972), Martin has failed to demonstrate a deprivation of his federal constitutional rights. Upon review of the pleadings and the record before it, the Court agrees.

In *Barker*, the United States Supreme Court identified four criteria to be considered in evaluating a speedy trial claim: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *See id.*

24

at 532. Under *Barker*, the length of the delay must be "presumptively prejudicial" in order to trigger an inquiry into the other three factors. *See Ringstaff v. Howard*, 885 F.2d 1542, 1543 (11th Cir. 1989). A defendant does not have to show actual prejudice by the delay, however, if the first three factors weigh heavily against the Government." *Id.* (citations omitted). "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. Th[e] [Supreme Court] has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.*

Applying these factors to the instant case, it is clear that Martin is not entitled to relief. The time between Martin's arrest on November 8, 2000, and the commencement of trial on April 18, 2002, was approximately seventeen and a half months. This time period, while arguably lengthy, does not approach the five year delay involved in *Barker* and is not "presumptively prejudicial." *See Ringstaff*, 885 F.2d at 1543. Trial delays were attributable to both the State and Martin. Martin's demand for a speedy trial was waived by counsel.[14] Martin was incarcerated between the time of his arrest and trial. Of these

---

[14] Although Martin does not allege in the instant § 2254 petition that his attorney waived his speedy trial right in the state trial court, a review of the state court record shows that Martin filed a motion to strike in which he challenged his attorney's waiver of speedy trial. (Dkt. 12, Ex. 1, Vol. Two, pp. 202-03). Martin, *pro se*, subsequently filed a demand for speedy trial and notices of expiration of speedy trial time. However, as the record demonstrates, those matters were disposed of by the state trial court and Martin did not subsequently refile any demand. Specifically, the following exchange took place prior to trial on March 27, 2002, during a hearing on the State's motion to continue:

MR. MARTIN:   Your Honor, I am expected to take this to trial now. I am ready to take it to trial.

THE COURT:   I know you are, Mr. Martin, and that is why I want to be able to assist you to [sic] that regard. And remember last time they amended the information, I even told you by law you have the right if you want to continue it, so you could work towards the additional date. I know that, sir. And right now, though, I cannot force the State. If

four factors, only the prejudice factor actually weighs in Martin's favor. *See Lowery v. Cummings*, 2006 WL 2361929 at *15, n. 10 (N.D. Fla., July 17, 2006). Thus, in order to prevail on this claim, Martin must demonstrate actual prejudice. *See Ringstaff*, 885 F.2d at 1543. This he has not done in the instant petition. Although he claims that he suffered a violation of his rights, Martin has not pointed to any evidence to show nor has he explained how he was prejudiced by any delay. Absent a showing of prejudice, he cannot prevail on this claim.

Based on the foregoing, the Court finds that the state district court of appeal's decision that Martin was not entitled to relief on this claim is not contrary to, or an unreasonable application of, clearly established Federal law or was an unreasonable determination of the facts of his case. *See* 28 U.S.C. § 2254(d). Accordingly, relief on

---

I force them right now saying, proceed with this trial, and she is in a carry over, this case will be reversed very quickly, and we will be right back where we started.

MR. MARTIN:    Well, it violates my Constitutional right to a speedy trial right now by her having another trial going on at the same time as this trial was set for trial itself.

THE COURT:    Just so you know, Mr. Martin, there has never been a demand for speedy, [sic] so there is really no issue of speedy trial at this time.

MR. MARTIN:    Can I – Your Honor, I have filed, in fact, I have filed – twice I have filed a demand for speedy trial. And I think three times I have filed a notice of expiration of speedy trial period. I have filed –

MS. SLACK:    That was done in front of Judge Boyer, and maybe Judge Farnell before Judge Boyer took over. Those were addressed when they were filed. After that, Judge Boyer did appoint the public defender, speedy trial was again waived when he was represented by the public defender. The PD again came off, and he has never re-demanded.

THE COURT:    As far, Mr. Martin, as I have been involved in this case, I have not seen from you any demand. And I want to make sure this is clear on the record. Okay. Let's do this, let's put it right back – when can we do it, Ms. Slack?

The state trial court thereafter reset the trial to commence on April 18, 2002. (Dkt. 12, Ex. 1, Vol. Three, pp. 511-12, 514). Martin does not argue to the contrary nor has he presented any sufficient facts or evidence to demonstrate that the State unreasonably delayed his trial.

Ground Nine will be denied.

**Ground Ten**

Martin alleges that the State Attorney and other State agencies intentionally suppressed and withheld evidence of the blood alcohol and urine screenings of the victim Cheryl Rucker. Martin contends that although he requested this "Brady material" during discovery, the State did not respond to the request. Three days prior to trial and after refiling his motion requesting this information, the state trial court ordered the State to disclose the test results to the defense. However, it was not until the morning of trial that the State informed Martin and the court that it did not have the information requested. Martin claims that this withholding of evidence was a *Brady* violation. Such violation was significant to his trial preparation and violated his due process rights under the Fifth and Fourteenth Amendments. To the extent that Martin cited cases related to discovery violations and due process that relied on federal constitutional law as support for this claim in his brief on appeal to the state court, and given that he cited and relied, in part, on Supreme Court precedent[15] related to the issues presented in his claim, the Court will consider the federal dimension of this claim to have been presented to the state court and will address the merits. *See McNair*, 2006 WL 3690728 at *4.

A review of the record demonstrates that Martin filed a specific discovery request on June 14, 2001, for results of any tests conducted on the victim's blood and urine samples. (Dkt. 12, Ex. I, Vol. Two, pp. 231-34). He again requested this information in a

---

[15] In his appellate brief, Martin relied in part on *United States v. Agurs*, 427 U.S. 97 (1976); *Brady*, 373 U.S. 83; *Moore v. Illinois*, 408 U.S. 786 (1972); *Kyles*, 514 U.S. 419.

motion to compel further discovery filed February 12, 2002. (Dkt. 12, Ex. I, Vol. Three, pp. 466-67). Three days prior to trial, the state trial court directed the State to provide the requested information, if available, to Martin. On April 18, 2002, the first day of trial, the state trial court addressed this issue in relevant part as follows:

MS. SLACK:    I want to bring to the court's attention, to Mr. Martin's attention, the State is ready for trial, and ready to proceed today. There's a few things that came up.

First, the court's ruling from Monday regarding the results of blood and urine on the victim, I spoke to Detective Burris of the St. Petersburg Police Department. They did take samples; however, they never had them tested.

We called the medical examiner's office to request how long that would take for them to be tested for drug and alcohol evaluation. They said at least two weeks, and they're also in the process of changing computer systems, so it would probably take more than two weeks. It was impossible to get results for today.

The next thing that happened this morning, the Florida Department of Law Enforcement did call; they have completed their analysis of all the evidence that was submitted to them. They had previously provided information that Mr. Martin has, that no semen was found present on anything. What they have now done, there's two items they tested for blood, and the fingernail scrapings under the victim's nails from the attack.

They're informing me that there is one spot of blood on the pillowcase that is positive to Mr. Martin; it matched Mr. Martin. They are informing me that nail scrapings, there's thirteen tests they performed, and one test shows a possibility that it would be Mr. Martin's within that. That's not something we intend to go into.

We do not have a representative from FDLE coming, but I want him to be aware that if he thinks that is something he needs,

obviously, we don't have a report yet.  They called to tell us the report was on the way, and that's what the findings were.

. . .

THE COURT:          Mr. Martin, what's your position, sir?

MR. MARTIN:         My position is as far as the urinalysis, I would request a Richardson hearing on that to see how does [sic] it prejudice – towards me in preparing my case, because that would have been a very intricate part of my defense that my wife was intoxicated, and when she made her report, she was also still intoxicated.

THE COURT:          Okay.

MS. SLACK:[16]       The report, the tests for that have been sent to the medical examiner back in 2000, around December of 2000, and they said they still haven't tested it.  That's over 17 months ago.  So, I mean, why not?  Why has not [sic] these things been tested?

THE COURT:          Ms. Slack.

MS. SLACK:          Judge, the samples that were taken from Ms. Rucker for the blood and urine were collected by St. Petersburg Police Department, but they never forwarded it to the Medical Examiner's Office.   Detective Burris' office says it was collected, and will be forwarded at a later date.  It was never forwarded.

I spoke to him on the phone two days ago; it was never forwarded to the Medical Examiner's Office.  That's when I personally got on the phone with the Medical Examiner's Office.  I said if I got that to you, could I have the results?  They told me at least two weeks, probably more, because we're in the process of changing our system over.

---

[16] The transcript indicated this statement was attributed to Assistant State Attorney Slack.  However, a reading of the statement in context indicates that this statement was made by Mr. Martin.

It's something we never requested, analysis, because we didn't feel we were going to use anything related to that. The officers will testify to her state of mind and impairment. Also, based on the court's ruling from Monday, we've been told not to, though we thought she was drugged – we don't have any evidence she was drugged, so I don't know that it really prejudices him not having it. But, obviously, if he wants it, that's something we need to address.

MR. MARTIN:         Yes, Your Honor, because the fact is, I want to make sure that it's known that my wife is [sic] intoxicated, and the blood alcohol, drug test will have proof that she was intoxicated.

THE COURT:         You know, Ms. Slack, I guess what I'm concerned with is we've known Mr. Martin's position from the very beginning, and this case has been set and reset now. This is like the second or third reset date because of issues, one of them the State attorney filed an amended information which was okay. Then I still don't understand why did you just two days ago get – why was it just done two days ago, Ms. Slack, regarding – he was taking the position he wanted that information.

You first indicated to the court that you furnished everything that you had over to him which included that. Then on Monday, on Motions in Limine, you discovered, well, maybe perhaps I did not furnish it to him, but I have it right here, and you said you were immediately going to furnish that to him. So the State was put on notice to provide him the information.

MS. SLACK:         Judge, I knew the examination had been taken; I assumed it had been forwarded to the Medical Examiner's Office. We never verified it. We were waiting for stuff from the FDLE; we were talking about this to Mr. Martin. It takes awhile. I never forwarded to him – I knew FDLE was getting it. I thought it was going to come together.

Monday, he specifically requested those results. I told the court I would look into it and find out. I knew I didn't have the results for alcohol and drugs. I went back and looked into it; now I discover that it never was forwarded to the Medical Examiner's Office. I tried to make it happen, and the Medical

Examiner's Office has never –

THE COURT:          Ms. Slack, in all fairness, yes, ma'am, you have the stuff. I ordered you to give it to him as soon as possible. You led me to believe that you had the results of those tests , that you had them with you, and then I ordered to [sic] immediately provide that to him. And it was on a Monday when we had these motions – so those were my words, "as soon as possible forward them to the Defendant."

You acknowledged the fact that yes, you will do that. Hang on, Ms. Slack. Now, you're telling me at that time you did not have those reports; obviously you did not, since you're now telling me that that was never forwarded.

MS. SLACK:          Right. And I did not mean to misrepresent anything to the court. I don't feel that I did tell the court, and I'm sorry if my words came out incorrectly that I had the results of those tests, because I did not. I did assume the tests had been done, and I just did not have the results of them. I thought it was all part of what went to FDLE, and part of the original evidence forwarded.

When I told the court that I would look into it and find the results, I truly meant that I would, thinking they were out there. That's when I found out they had not been forwarded by the detective, and I tried to make it happen, and the Medical Examiner's Office is telling me it cannot happen. So there was no intentional representations to the court at all, and I'm sorry if there was a misunderstanding.

THE COURT:          You are quite clear – hang on, Ms. Slack. Hang on, because that's one thing, especially in this case when I'm trying to ensure that everything is done appropriately, and that's why I indicated to you as soon as possible to provide that to him. But that's one issue.

So right now, Mr. Martin, they don't have that stuff. And I know that was the position that you were taking that your wife was intoxicated at the time, and you wanted to be able to make

reference to it. Well, she doesn't have those results. What do you wish to do? Hang on.

Mr. Martin, your case is set for trial today. When you're talking about Richardson inquiry, what is Richardson? Yes, discovery violation was made, but the problem is, will it cause you prejudice? Of course, it will cause you prejudice, because this case is set for trial. Typically, what happens I exclude evidence, but in this case you want that evidence, so any type of exclusion makes – doesn't really help you any.

MR. MARTIN:      Right.

THE COURT:      So right now if that is a piece of information you need, sir, what do you want to do at his point in time, Mr. Martin?

MR. MARTIN:      Really, some kind of sanction to the State. Furthermore, the State was saying FDLE had further results, because under the original results FDLE had posted on the 26th of October of last year, it was Friday, they had further results. Is there any way that FDLE could fax the results over for the blood, the results and things to that nature?

THE COURT:      You're telling me, Ms. Slack, that two items were submitted for blood and fingernail scrapings, and they're able to verify that one spot of blood was positive for the Defendant; is that correct, Ms. Slack?

MS. SLACK:      That is correct. There were two spots on the pillowcase. One spot came back positive to Mr. Martin; the fingernail scrapings. [T]here's a little bit of evidence it would be the same makeup as Mr. Martin's, but it's not a "direct," it's from Mr. Martin, if that makes sense, is the was they explained it to me.

THE COURT:      It's usually a rule of exclusion. That's how they usually do with blood testing. They can't say, you know, you're the one, but they say there's a good probability in millions that you fit within that criteria. That's typically what the test is. So, Mr. Martin, do you want to see that? Do you have that with you?

MS. SLACK:      I do not have that.  I could call back.  They said it had been dictated but not completely done, that they could provide me the report.  I said tell me what you know so I can relate it to Mr. Martin.

THE COURT:      Let me do this.  Right now, ma'am, because you don't have that, obviously the State cannot make any reference to that, since today is the day of trial.

MS. SLACK:      We didn't plan to.

THE COURT:      Just so you know, Mr. Martin, I will not allow the State to use this evidence, because here we are on the day of trial, and this evidence is detriment [sic] to you.   You've not had that opportunity to review that evidence before and, basically, they're able to show that there was blood, and it was positive for you.  And Ms. Slack is telling me she just found out about it, and here we are, because the date of trial, I'm not going to allow them to get into that testimony.  Okay?

So if you want people to fax that over to you, I don't know what difference that will make.  I'm not going to allow them to get into that aspect, because this again is clearly a discovery violation in terms of failing to furnish that information to you, sir, in preparation for this trial.

MR. MARTIN:     See, that was another aspect of the theory of my trial, which is that my wife did attack me and she hit me, and I thought, she stated in her deposition that not one time did she ever fight back.

THE COURT:      So you want the evidence to show that yes, it's your blood, and she attacked you?

MR. MARTIN:     Right.  I been [sic] cut myself.  So, I mean, that's the part I'm saying.  They're trying to forward evidence which will show that my wife's whole story to all these alleged charges is preposterous.  That's ludicrous the way everything happened. This type of evidence proves that, you know, I was attacked as well.

THE COURT:        Okay.   Ms. Slack, why wasn't that type of information forthcoming prior to this now third or fourth trial date?

MS. SLACK:        Judge, we had talked to FDLE when we received the original report. It says in the original report these certain things do not test positive for semen; these other things we're going to the next step, test blood. We told them then this is when we're set for trial, get it done. They got it done before today, but not nearly enough for us to get a report. That's all I can tell the court.

I know you'll – I'm sure you have dealt with FDLE, and sometimes they just don't get stuff done. I truly expected to go to trial never having the results of the test, because we kept asking for it. We're getting on it; we're working on them; we're working on it. I got that this morning. I actually received a message this morning when I was up here with Your Honor that they had called.

MR. MARTIN:        Your Honor, have you ever seen this FDLE report?

THE COURT:        No, sir, I don't receive any reports.

MR. MARTIN:        Anywhere in this report here back on October 29th, when you had signed a court order for me to give a blood sample to Detective Burris, or whatever to send –

THE COURT:        Yes.

MR. MARTIN:        For me to send to FDLE, they stated that Exhibits 10 and 36, which was for a bloody pillowcase, and Exhibit 10 was fingernails scrapings. It said it would be subject to a separate report, and that was back in October of last year; this is April. They still haven't had time?

THE COURT:        What do you want to do, Mr. Martin?

MR. MARTIN:        I would like to have those test results especially for the bloody

34

pillowcase, because that's paramount to my case.

THE COURT:      Then Ms. Slack, they haven't prepared a report, but this is something that if you call them right now and have them fax it over to you, can that be accomplished?

MS. SLACK:      I can definitely try.

THE COURT:      The only other thing, Mr. Martin, unless there's a stipulation right in the record that there's an agreement between both of you that based on blood and fingernail scrapings, the spot of blood was positive for the Defendant if that report is not forthcoming – you want to be able to bring it in, because you want to be able to show, at least tell the jury it was your blood, because she's the one who attacked you, correct?

MR. MARTIN:     Yes.

THE COURT:      And the State is eager to get that in, because it shows positive for the Defendant?

MS. SLACK:      Right.

THE COURT:      If you're not able to get the report, we need to try to resolve this report, see what we can do. If you all are in agreement FDLE can't get the report, I can read a stipulation to the jury that this is what is it. Is that what you want me to do, Mr. Martin?

MR. MARTIN:     If she wants to get the report, I would like to stipulate to the jury that is the results [sic] of the test, that it was my blood.

THE COURT:      And then you could explain your position to the jury. All right.

                . . .

THE COURT:      ... All right, which brings me back to the main criteria in this case: This is the blood and urine sample of the victim. Since you need that information, Mr. Martin, and the State did not provide that information, or is not able to get that information,

in order just to rectify the situation, Ms. Slack, I'm going to allow Mr. Martin to argue to the jury his position even though there's no document proof of this, that – and if it's his motion [sic] that his wife was drunk that day, typically I would not allow it unless I have specific evidence, but in this case, to prolong this case, which Mr. Martin does not wish to reset this case, in order to make sure that he receives it, he's not prejudiced by that, Ms. Slack, I'm going to allow Mr. Martin to make that argument to the jury that it's his position that his wife was in fact intoxicated at the time.   I think that's the best way to remedy the situation by not having that information.  Okay?

MS. SLACK:      I agree.

THE COURT:     So, Mr. Martin, normally I would not allow you to do that, but I will allow you to make that argument to the jury.

MR. MARTIN:     I thank you, your Honor.

(Dkt. 12, Ex. I, Vol. Six, pp. 4-17, 19-20).

Martin can demonstrate the first three elements of a *Brady* violation as to this evidence: the State possessed evidence favorable to the defense, Martin did not possess the evidence and could not obtain it with any reasonable diligence, and the State suppressed the evidence (i.e., did not turn over the evidence to Martin prior to trial).  *See Schier*, 438 F.3d at 1106, n.1; *Spellman v. Haley*, 2004 WL 866837 at *6 (M.D. Ala., Feb. 22, 2002).  However, he cannot demonstrate that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense at an earlier time.  *See id.*  The state trial court allowed Martin to present to the jury the very evidence and argument related thereto that he sought through the discovery process.  As the state trial court pointed out, the State did, in fact, commit a discovery

36

violation. The court further noted that the usual remedy would have been to exclude the evidence and not permit the State to use the evidence at trial. In Martin's case, the state trial court did not allow the State to use the evidence but did allow Martin to present his theory of the case and make the very arguments he sought to make based on that evidence to the jury. Thus, although it is true that the State did not provide this evidence to him prior to trial pursuant to his discovery request, he has not demonstrated that the outcome of his trial would have been different had the evidence been disclosed at an earlier date. Thus, he cannot show a *Brady* violation.

Based on the foregoing, the Court finds that the state district court of appeal's decision that Martin was not entitled to relief on this claim is not contrary to, or an unreasonable application of, clearly established Federal law or was an unreasonable determination of the facts of his case. *See* 28 U.S.C. § 2254(d). Accordingly, relief on Ground Ten will be denied.

Accordingly, the Court orders:

That Martin's § 2254 petition is denied, with prejudice. The Clerk is directed to enter judgment against Martin and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only

if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on _APRIL 24th_, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Hugh Gilbert Martin